Next case is Exotech versus the United States, 2019-17-43. Mr. Welch, we're ready when you are. Thank you, Your Honors. My name is Bill Welch for the appellant here. The issue here is the interpretation of a regulation in the program for the service-disabled veteran-owned company preference established by the Small Business Administration. We have no basic disputes between the parties on the facts. The question really involves the interpretation of the control requirement under the regulations. Can I just ask you, is one of the facts that both sides accepts that if the two non-veteran managers entered into a contract, it would bind the company and the ability of the veteran 90% owner to fire those two people would not automatically undo that contract? It would not undo the contract, but that situation really is not any different than a situation of a parent authority when you have executives involved. An executive in the operation of a company would have a parent authority to enter into a contract that wouldn't immediately be able to be reversed in the situation of the enforcement by a third party of the contract. What would have to happen in this case would be that, in fact, in that situation that contract would never be reversed, but the executive of the corporation or ultimately the members of the LLC would have the ability to remove the individual who made the errant contract and the contract basically would have to be handled one way or the other, but it could never be voided. So I don't see any difference in the control requirement in that respect and the control requirement that Judge Taranto has just mentioned. It is possible for the two managers to be in a situation to enter into a contract, but if the contract, for example, is executory, there could be enough time to remove the two offending managers and reverse the contract. That might depend on whether the counterparty felt interested in having the thing reversed. That is true, but that is also true in a situation of a parent authority. So, frankly, I don't see any difference in the two situations. Where I do see the difference is that the ultimate power of the other two managers is contingent and derivative on the power vested through the management control of the service-disabled veteran. In this case, you have a service-disabled veteran who owns and controls 90 percent of the voting interests of the LLC. There's nothing in the operating agreement that surrenders without remedy, ultimately controlled by the management, which is ultimately controlled by, in this case, the service-disabled veteran, Gary Marullo. And Mr. Marullo would have the power to reconstitute the board if he wants or if there's some sort of rebellion, so to speak, against him by his wife and son in this situation. But again, it's something that could be remedied internally, but it's still something that could be remedied externally. But again, no different in a situation where you have, for example, a large or sophisticated company that has executives who, for all appearances, would have the authority to enter into a contract. I don't see the difference there. So again, part of this is sort of, frankly, I believe, a vestige of the fact that the government, these regulations were set up with respect to fairly small companies that are veteran-owned. When you get to a level of sophistication such as this company, where you're talking about average revenue in the neighborhood of $35 million, when you're talking about contracts that range in the $70 million range, multiple contracts, actually, in this case, in the $70 million range, and 400 employees. So when you get to that sophisticated level... But the size of the company isn't inconsistent with having one person in control. Every company virtually has a CEO. Right. That's true. In fact, in this case, even though there's, I guess you may want to say there's some idea of what a CEO is in this particular case, but in this case, there is a chief operating officer who is different from Mr. Marullo, and that chief operating officer operates the company under Mr. Marullo's guidance on a day-to-day basis, but still has the apparent authority to run and enter into contracts with other parties. But manager decisions, major decisions, require a majority vote of the top three people. That's correct, Your Honor. Which means one of them is no one that has total control. Right, but one of them has non-derivative, non-contingent powers. The other two's powers are solely contingent and solely derivative in their procedures within the operating agreement by which Mr. Marullo can remove both of them. And that's true also on the executive side as well. You have a situation where you have executive officers that have the authority to enter into contracts such as a five-year lease on an automobile, for example, which is one of the court's examples, a situation where Mr. Marullo cannot simply make, given the size of the company, cannot simply make every decision that's available to be made. In fact, I think one way of really understanding the problem here is that the government, the SBA, and even the court below found that really control means to make the decision. Make the decision on the spot. And this is where size becomes relevant. So, if you have a situation where you're going to force your service disabled veteran to make the decision, every decision, every contractual decision on the spot, that's going to necessarily limit the capacity of the company to grow, which I'm sure that Congress did not intend. But if you have the power, as the regulations certainly do seem to imply, you have the power of delegation, a revocable delegation, then you have a situation where that the veteran can delegate some authority to make a decision while also maintaining control of that same decision. Is it always going to be exactly the decision that the veteran would make in that same situation? Not necessarily. But again, it's a contingent delegation that the veteran makes. And the veteran, with a company of this size, the veteran has to make that type of delegation to operate a company of this level of sophistication. And when you're talking about government logistics contracts for the U.S. Army, you're talking about doing operations that will sometimes require spur of the moment type decisions. Are they always the correct decisions? Are they always the decisions of the veteran? No, not necessarily. But the veteran has to be able to control, in a broader sense control, the ultimate decisions to be made by the company. Might there be binding decisions that would saddle the company, just as you would a contractual decision by a three-member board? Yes, that is possible. But again, the ultimate control, the fact that there's a non-revocable delegation to other managers doesn't mean that he has lost control of the company. He can get that control back at any time. He could have given it up if he wanted in the operating agreement, but he didn't. He didn't because he needed to maintain control as the disabled veteran. We're about to get into your rebuttal time. You can continue if you like, or we will save it. I'd like to save it if you don't mind. We will do that. Mr. Lovegraven. Good morning, may it please the Court. Exotech was ineligible to compete as a service-disabled veteran-owned small business for the solicitation at issue in this case because it didn't meet the requirement that a service-disabled veteran control all decisions. Now, Exotech structured itself so that management of the company was run by a group of three, and decisions would be made by two out of three votes. The problem for Exotech is that two out of the three, the majority of the managers are non-veterans. So any decision that any management decision that Exotech makes is necessarily contingent on the vote of a non-veteran, and also two non-veterans could make those decisions on their own. But those two non-veterans are removable at the choice of the veteran, isn't that correct? That's correct, but we've talked in terms of disputes, but I think the basic point is that even if everyone agreed on a specific course of action, Mr. Gary Marullo could not make that decision on his own. He would need the vote of one of the other managers. But just focusing on removal, there are certain contexts, such as constitutional contexts, in which the ability to remove is viewed as the ability to control. Why should this not be read in the same way? As an initial matter, at the time that Exotech submitted its bid, those managers were there, and that's the constitution that counts when you're submitting an offer. It's the time that you submit the offer. So, at that time, those managers were there. The basic point is that even though he could theoretically remove them, the point is until he does, those managers are still there, and they still have the power to make decisions, subject to two of them, are empowered to make decisions on behalf of Exotech. But is the regulatory standard that he would be able to control all decisions? Well, that's one of the standards. In a limited liability company, you need to retain control over all decisions. But that's the standard that was found to be flunked here. Is that right? That's correct, Your Honor. So why is it that his ability to remove his wife and son from the positions isn't sufficient to control the decisions that two of them, while not yet removed, would be making? Because those people are still there. So, until he does remove them, as it exists, as Exotech exists, Mr. Marullo cannot do anything without one of their votes. So, until they are removed, they're there. If he removed them and didn't put in place two additional managers, and he was the only manager left, could he make the decisions, the managerial decisions himself? Do we know? I'd have to look into that point. The operating agreement has certain sorts of restrictions on it, whether or not he has to then amend the operating agreement to change it, to change the amount of managers, because one out of three wouldn't be a quorum. I can't speak to that point. I think the general point, though, is that as Exotech structured itself, there were three managers. He was the only service disabled veteran, was only one of them. Were there employees below those three managers? As I understand it, Exotech has several, about 400 employees, I believe. So, how is it, and any decision that those people would make would be, what, controlled or not controlled by somebody higher up? Well, okay. As long as they're in office. Well, there's a distinction. I mean, as an initial matter, the operating agreement doesn't say anything about delegation. As it's written, certain types of these management decisions are controlled by this group of three. One of the powers that managers have is a power to hire and fire and define employees' duties. So, any delegation to employees is a delegation of manager power. It's a delegation of the three. So, Mr. Murillo, on his own, could not delegate management authority, at least under the operating agreement, as it existed at the time they submitted their proposal. I guess I'm thinking just about the kind of situation that Mr. Welch was talking about. Unless this regulatory scheme was meant to apply only to companies that stay very small, there's no chance in the world that lots of decisions are not going to be made within a company by lower-level people who presumably have some authority to take actions. I understand what Your Honor is saying, and I just want to respond with two points. But I guess as a common-sense matter, if those people can be removed, can be fired, why isn't a person who can fire them in control? Well, okay. To the extent that managers delegate, let's say, accounting, you know, preparation of taxes or something like that to a chief financial officer, let's say the managers as a group do that. No, buying pencils. Put in a third party. Sorry, so they delegate to an employee? Yeah, go and buy, forget about pencils, too trivial, buy a computer. Sure, and enter into a contract on behalf of the company. The managers can authorize, according to these terms, again, this is the terms of their operating agreement. The way their operating agreement is structured, the managers can authorize, you know, upon a majority vote, one of the managers to enter into contracts that bind the company. So, that's how Exotech structured itself. If this were a different company, the answer would be different. But Exotech structured itself so managers would, as a majority, you know, delegate one of them to enter, you know, to enter into a contract for the purchase of goods. And, but it does, your argument does depend on saying that Mr. Muroro, even though he can fire the other two managers, doesn't control their decisions. That's correct, yes. I mean... Unless and until that occurs, we have the particular structure that's tripartite. Yes, your Honor. And isn't there a distinction between major decisions and lesser decisions? That's, well, there are distinctions between member decisions and manager decisions. And the member decisions are generally transformational, you know, reorganization or bankruptcy. So, those decisions are controlled by Gary Muroro. Is there a distinction between the major and minor decisions in the regulations? In the regulations, well, one of the requirements, not necessarily in terms of making the decisions, the service disabled veteran needs to conduct both the long-term planning and the day-to-day operations. That's what the regulation requires. But that's a different question than the decision-making. What is the day-to-day operations versus decision-making on minor matters? How do they differ? Well, I mean, the... I mean, I think it depends on... I mean, if we're talking about, you know, minor decisions, the service disabled veteran needs to at least be able to control them. So, if there's a decision that he disagrees with or she disagrees with, you know, as the case may be, then they'd have to have the ability to say, you know, to say, no, you need to make a different decision. But in terms of ExoTec's operating agreement, things like procuring insurance or bringing this litigation, those are decisions that the managers have to make, and those reflect an exercise of manager authority. Again, this is, you know, we can easily see how a... I mean, this is a family, we understand, but we can easily see how this type of structure could be abused. You could have a service disabled veteran who has no interest in operating the business at all, and who's just happy to gain some sort of profits, and that's not why this regulatory program was, and actually statutory program, was put into place. It was to benefit, you know, service disabled veterans who own small businesses. Again... In other words, there's a benefit program here, and if someone wants to meet the terms of it, they should structure their organization accordingly. Correct. And just to follow up with that point, if it's in fact correct that in substance Mr. Marullo does in fact, you know, make, control all decisions and operate as such, then ExoTec can easily amend its operating agreement to reflect that reality and to meet the requirements of the regulation. And just to follow up with, just to respond to... What would the change, what change would be sufficient in a company that has many hundreds of employees? Well, I can't speak to what precise change would be required, but as a basic matter, he would need to be able to control all decisions, and that does mean even if he doesn't make all decisions, he needs to have the power to do so. By something other than being able to fire the person. That's correct. It needs to be structured in a way that anticipates that the service disabled veteran does in fact exercise control over all those decisions. Just to respond to the apparent authority point, there's a distinction between apparent authority and actual authority. Here, non-veterans have actual authority. So, the hypothetical about apparent authority, first of all, only applies in some very narrow circumstances like the principal tells somebody that the employee has actual authority or makes public statements to that effect. So, there's a difference there. The point about that he could have maintained control, but structured the operating agreement in this way to give it to a group of three managers. Well, they can amend the agreement to reflect that and to put themselves into compliance with the regulation. And the amendment, give me one example of an amendment that would work. Sure. Let's say instead of three managers, they reverted to their prior structure which only had one manager. And that would be at least one thing that's... It would have to be him. And it would have to be the service disabled veteran. Or he had three managers, but they're all service disabled veterans. And that's another way that service disabled veterans can still maintain control while having the benefit of three other minds in making those kinds of decisions. But again, this is a public program designed to benefit a certain class of people. The agency that's responsible for administering that program has set up the requirements. And to the extent that a company wants to participate in that program, it's their job to structure themselves accordingly. So given that, with that really, we really just respectfully request, unless the court has further questions, we just respectfully request that the court affirm the judgment below. Thank you. Counselor, Mr. Welch has some rebuttals on it. Thank you, Your Honor. I just wanted to make a couple of quick points. To follow up on Judge Tarando's question about what sort of examples would you need to amend the operating agreement to give the disabled veteran the type of actual control that is necessary, I would say, frankly, it's impossible. What we do in this situation, and we weren't involved in the drafting of this gargantuan operating agreement, but what we normally do is we set up a situation where if we have a board for an LLC, we allow votes if we have multiple board members, but we also allow that the veteran must always be in the majority decision. That only takes care of the very uppermost measure of decisions that the company makes. When you have a company this size, you're always going to have, you're always going to be in a situation where you have to delegate to other executives, and counsel had mentioned that, let's see, well, let me make a few points. Counsel had mentioned that, and I think the best way to look at this, let me put it this way, the best way to look at this situation is that the way the SBA and the government has been reading this requirement is that they've always been reading the requirement as that the veteran must be able to make, must be able to control, and the only way to maintain 100% control is to make every decision, but that's not feasible in this situation. But to be entitled to make every decision? There's no question in this case that the veteran is entitled to make every decision because... Without another vote? Well, in the sense that the veteran will always have removal power of the person who is making a decision that would be contrary to the decision of the veteran. So, in that respect, he always maintains control. Does the regulation go beyond requiring ability to control to require actual control? I thought the language was owned and controlled. This is the regulation at 13 CFR 125.13D, control over, and there's a specific requirement for limited liability companies, control over limited liability companies. In the case of a limited liability company, one or more service-disabled veterans, and then there's a situation where the veteran, let me just read it without the parenthetical. I don't think the parenthetical here is applicable, but one or more service-disabled veterans must serve as managing members with control over all decisions of the limited liability company. So, you're talking about control over all decisions. And we believe that the only feasible way that control here can be meaningful of a company of any size other than a mom-and-pop type company is that the veteran must be able to either make the decision or to remove the person who is going to make a contrary decision or remove the person who has the parent authority to make a contrary decision. So, it's essentially a combination of the veteran either has to make the decision or control the person who attempts to make the decision. Thank you, Counsel, as you see. Thank you, Your Honor. The red light is on. The case is submitted. Thank you. All rise. The Honorable Court is adjourned until Monday morning. It's o'clock a.m.